# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (DAYTON)

| | |
|---|---|
| VERNE S.,[1] | : Case No. 3:24-cv-00280 |
| Plaintiff, | : |
| | : District Judge Michael J. Newman |
| vs. | : Magistrate Judge Caroline H. Gentry |
| | : |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| | : |
| Defendant. | : |

## REPORT AND RECOMMENDATION[2]

Plaintiff filed an application for Disability Insurance Benefits in January 2022 and for Supplemental Security Income in February 2022. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not under a "disability" as defined in the Social Security Act prior to November 21, 2022, but also concluded that he became disabled beginning on that date. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

Court to affirm the partially-favorable decision. For the reasons set forth below, it is recommended that the Court REVERSE the Commissioner's partially-favorable decision and REMAND for further proceedings.

I.      BACKGROUND

Plaintiff asserts that he has been under a disability since December 9, 2020.[3] At that time, he was fifty-three years old. Accordingly, Plaintiff was considered a "person closely approaching advanced age" under the Social Security regulations. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).[4] Plaintiff changed age categories and was a "person of advanced age" on the established disability onset date. 20 C.F.R. § 404.1563(e). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 43-66), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[3] Plaintiff initially alleged that his disability began on October 1, 2021. (AR, Doc. No. 7-5 at PageID 274, 283.) He amended his alleged disability onset date to December 9, 2020 during the August 2023 hearing. (AR, Doc. No. 7-2 at PageID 76.)

[4] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

## II. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the

3

evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III.  FACTS

#### A.  The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in

the Social Security regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since December 9, 2020, the amended alleged onset date. |
| Step 2: | | He has the severe impairments of degenerative disc disease, diabetes with retinopathy and macular edema, cataracts, and obesity. |
| Step 3: | | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: No more than frequent kneeling, crouching, crawling, near or far visual acuity, or balancing, as defined in the Selected Characteristics of Occupations, as published by the U.S. Department of Labor (S.C.O.). No more than occasional stooping or climbing of ramps and stairs. No climbing of ladders, ropes, or scaffolds. The claimant should avoid all exposure to unprotected heights, heavy machinery, commercial driving, and bright lights, such as direct sunlight. The claimant may be exposed to lighting found in a typical office.<br><br>He is unable to perform any of his past relevant work. |
| Step 5: | | Prior to November 21, 2022, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform.<br><br>Since November 21, 2022, considering his age, education, work experience, and RFC, there have been no jobs in significant numbers in the national economy that Plaintiff can perform. |

(Decision, Doc. No. 7-2 at PageID 49-58.) These findings led the ALJ to conclude that Plaintiff was not disabled prior to November 21, 2022 but has been disabled since that time. (*Id.* at PageID 58.)

B.     **State Agency Medical Consultants**

State agency medical consultant W. Scott Bolz, M.D. completed a Disability Determination Explanation form in July 2022. (AR, Doc. No. 7-3 at PageID 105-08.) After summarizing the evidence reviewed (*id.* at PageID 105-06), Dr. Bolz concluded that Plaintiff's spine disorder, diabetes mellitus, cataracts, and hypertension were severe. (*Id.* at PageID 106.) In the Symptoms Evaluation section of the form, Dr. Bolz stated that Plaintiff's alleged symptoms were "[p]artially consistent" with the "total medical and non-medical evidence" of record. (*Id.* at PageID 106-07.) He explained: "[Plaintiff] endorses ambulation is limited to standing for 10 minutes or less. While [Plaintiff] has positive findings on imaging, [Plaintiff] does retain full muscle strength making statements partially consistent." (*Id.* at PageID 107.)

Dr. Bolz also addressed the medical opinion of consultative physician Amita Oza, M.D. and concluded that the opinion was not "more restrictive than the findings." (AR, Doc. No. 7-3 at PageID 107.) According to Dr. Bolz: "In the absence of any treating source opinions, and because this opinion is consistent with and supported by other reports and evidence, the consultant's conclusions are found to be persuasive. The exam is detailed and proposes specific limitations. No contradictory findings are found." (*Id.*)

In the physical RFC section of the form, Dr. Bolz opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk for a total of approximately six hours in an eight-hour workday, and sit for approximately six hours in an eight-hour workday. (AR, Doc. No. 7-3 at PageID 107.) Dr. Bolz opined that Plaintiff could frequently balance, kneel, crouch, and crawl, and

6

only occasionally stoop and climb ramps or stairs. (*Id.* at PageID 108.) Dr. Bolz also opined that Plaintiff could never climb ladders, ropes, or scaffolds and needed to avoid all exposure to hazards, including heaving machinery, commercial driving, and unprotected heights. (*Id.*) When asked to explain the exertional limitations that he assessed, Dr. Bolz wrote: "antalgic gait, [positive straight leg raising], [and] spondylotic changes through [the] mid[-] lumbar spine." (*Id.* at PageID 107.)

      Bradley Lewis, M.D. reviewed the updated record and completed a Disability Determination Explanation form at the reconsideration level in November 2022. (AR, Doc. No. 7-3 at PageID 121-25.) After summarizing the evidence (*id.* at PageID 121-22), Dr. Lewis concurred with Dr. Bolz's conclusions about Plaintiff's severe impairments and that Plaintiff's reported symptoms appeared partially consistent with the medical evidence. (*Id.* at PageID 122-23.) Dr. Lewis also concurred with and adopted the exertional and non-exertional limitations identified by Dr. Bolz. (*Id.* at PageID 123-24.) In support of his conclusions, Dr. Lewis cited Dr. Bolz's explanation, as well as the May 2022 consultative examination findings, a lumbar spine x-ray report, and findings that were documented in Plaintiff's June 2022 office visits for treatment of diabetic retinopathy. (*Id.* at PageID 124-25.) Dr. Lewis further explained: "While evidence at reconsideration reflects ongoing [outpatient] treatment for retinopathy, [Plaintiff] retains sufficient functional capacity for work as outlined in the initial RFC." (*Id.* at PageID 125.)

      The ALJ concluded that he was "substantially persuaded" by the consultants' findings. (Decision, Doc. No. 7-2 at PageID 54.) The ALJ explained: "The undersigned

7

finds these recommended limitations supported by citations to the record and explanation, as well as consistent with the medical record. As such, the undersigned has adopted them as the bulk of the claimant's residual functional capacity." (*Id.* at PageID 55.) The ALJ further explained, however, that "[o]ut of an abundance of caution . . . and in deference to the claimant's visual difficulties," he further limited Plaintiff to the light exposure and visual acuity limitations in the RFC, "neither of which appear to have been considered by the reviewing physicians." (*Id.*)

      C.      **Consultative Physician Amita Oza, M.D.**

Amita Oza, M.D. performed a consultative physical examination in May 2022. (AR, Doc. No. 7-7 at PageID 523-29.) Dr. Oza documented the following neurological and musculoskeletal findings in her report:

> Shows him to be right-handed. Grip strength is strong, bilaterally symmetrical. Range of motion at joints in upper extremities is full except at shoulders where there is restriction as he complains of pain in his back. There is tenderness on palpation of dorsolumbar spine and right paravertebral muscles. On straight leg raising test at [thirty] degrees, it was positive on the right side. Range of motion at right hip and right knee is also slightly restricted because of his back pain. Range of motion is full at other joints. Reflexes are 2+. I could not feel obvious significant weakness of right great toe extensor, as he is very strong on left side, but he walks without ambulatory aids favoring his right lower extremity. Range of motion at [the lumbar spine] is restricted, as described.

(*Id.* at PageID 524.) Dr. Oza concluded that Plaintiff had glaucoma, poor near vision, "hypertension which is slightly elevated," diabetes without end-organ damage, a history of a back injury, and "right-sided lumbar radiculopathy and pain, as described." (*Id.*) She opined that, due to Plaintiff's back pain, "work-related activities appear to be affected till [sic] he gets his surgery done." (*Id.*)

8

The ALJ concluded that Dr. Oza's opinion was "no more than minimally persuasive." (Decision, Doc. No. 7-2 at PageID 55.) The ALJ acknowledged that Dr. Oza "personally examined [Plaintiff] and conducted musculoskeletal testing," and that she provided a "brief listing of [Plaintiff's] complained-of conditions." (*Id.*) However the ALJ stated that "in terms of a function-by-function analysis, [Dr. Oza's report] offers only the statement that "work-related activities appear to be affected till [sic] he gets his surgery done." (*Id.*) According to the ALJ, such a statement is "persuasive in regards to its conclusion that the claimant necessitates work limitations, which is supported by Dr. Oza's own examination findings, consistent with the overall record, and addressed by the limitations set forth herein." (*Id.*) On the other hand, the ALJ discounted Dr. Oza's opinion because it "fails to provide a function-by-function analysis of the claimant's capabilities, reducing the overall persuasiveness of the assertion." (*Id.*)

IV.     **LAW AND ANALYSIS**

Plaintiff asserts that the ALJ "reversibly erred by failing to build an accurate and logical bridge between the evidence and his conclusion that Smith can sustain light exertion work prior to November 21, 2022." (SE, Doc. No. 8 at PageID 752.) For the reasons discussed below, Plaintiff's assertion is well-taken and the ALJ's decision should be reversed.

A.     **Applicable Law**

It is well-established that determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical

9

evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

The ALJ is required to consider evidence from the entire relevant time period when formulating the RFC. *E.g., White v. Comm'r of Soc. Sec.*, No. 3:21-cv-762, 2022 U.S. Dist. LEXIS 140674, *47 (N.D. Ohio June 1, 2022) (Knapp, M.J.), *aff'd* 2022 U.S. Dist. LEXIS 139178 (N.D. Ohio Aug. 4, 2022) (Knepp, D.J.). As Magistrate Judge Knapp explained, "[w]hile the substantial evidence standard is deferential, the Sixth Circuit has emphasized that the chief limitation to that deference 'is the requirement that all determinations be made based upon the record in its entirety.'" 2022 U.S. Dist. LEXIS 140674, *47 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007)). Thus, an ALJ should not "unduly concentrate on one single aspect of the claimant's history." *Rogers*, 486 F.3d at 249.

Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion

10

evidence when determining the RFC, but is not required to adopt them or adopt any such findings verbatim. *Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). In addition, "[t]he determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, at *11 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers,

11

M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

### B. The ALJ's RFC Is Not Supported By Substantial Evidence.

Plaintiff asserts that the ALJ erred by adopting the assessments of the state agency medical consultants, who "did not even review substantial critical objective evidence." (SE, Doc. No. 8 at PageID 758.) For the reasons discussed below, the Court concludes that the ALJ's RFC is not supported by substantial evidence because the ALJ did not build a logical bridge between his decision to adopt the state agency medical consultants' assessment and the later-submitted evidence related to Plaintiff's spine condition. The ALJ's decision should therefore be reversed and remanded.

As an initial matter, Defendant asserts that Plaintiff "has not pointed to any evidence that the state agency doctors did not have access to that would have altered their opinions and that of the ALJ." (Mem. In Opp., Doc. No. 10 at PageID 775.) As Plaintiff points out, this contention is incorrect. Plaintiff did cite to several records that were not reviewed by the state agency medical consultants: physical therapy notes dated between June and August of 2020, an August 2020 lumbar spine MRI report; and orthopedic treatment notes dated in August and September of 2020 June and July. (SE, Doc. No. 8 at PageID 758-60 (citing AR, Doc. No. 7-9 at PageID 711-12, 724, 733, 744-45, 747, 751).)

Although these records pre-dated the state agency medical consultants' July and November 2022 assessment reports, they were not added to the record until after the consultants reviewed the record and provided their opinions. (*Compare* AR, Doc. No. 7-3 at PageID 108, 132, *with* AR, Doc. No. 7-9 at PageID 698.) Therefore, the consultants

did not review or consider these records when they evaluated Plaintiff's physical condition and opined that he could perform light-exertion work with additional postural and environmental limitations.

Significantly, these records showed more significant pathology and examination abnormalities than the records reviewed by the consultants. The physical therapy notes from June and July 2020 documented Plaintiff's complaints of pain in the low back and down the right thigh, as well as sharp, stabbing pain with some motions and transfers. (AR, Doc. No. 7-9 at PageID 724.) Examinations showed limited range of motion at the hip and trunk, decreased right leg strength, decreased strength with lumbar extension, increased radicular symptoms with some stretching and movements, and an inability to perform quick movements without increased pain. (AR, Doc. No. 7-9 at PageID 711-12, 724, 733.) When Plaintiff began seeing an orthopedist in August 2020, he complained of low back pain that radiated down his right leg, and said that twelve recent physical therapy sessions did not alleviate his symptoms. (AR, Doc. No. 7-9 at PageID 744, 747.)

Further, the August 2020 lumbar spine MRI report showed:

1. Severe canal stenosis at L4-L5, in part due to a large central and right paracentral disc protrusion.

2. Left subarticular zone disc protrusion at L3-L4 with associated moderate canal stenosis and advanced left lateral recess stenosis.

3. Mild to moderate canal stenosis at L1-L2, and mild canal stenosis at L2-L3.

4. Congenital canal narrowing in the lumbar spine contributes to the above canal stenosis.

13

     5.     Multilevel mild and moderate foraminal stenosis, detailed level by level above.

(AR, Doc. No. 7-9 at PageID 751.) Orthopedist Domingo Molina, M.D. recommended a two-level decompression surgery based on "[Plaintiff's] severe stenosis secondary to disc herniation." (AR, Doc. No. 7-9 at PageID 745.) In September 2020, Dr. Molina again recommended surgery due to "intractable pain and weakness." (AR, Doc. No. 7-9 at PageID 747).) Therefore, contrary to Defendant's assertion, Plaintiff did cite to "evidence that the state agency doctors did not have access to that would have altered their opinions and that of the ALJ." (*See* Mem. In Opp., Doc. No. 10 at PageID 775.)

     Defendant relies on two Sixth Circuit cases to argue that "[t]hough the state agency doctors did not include the evidence at the time of their opinions, the ALJ took this into account and considered the earlier evidence based on Plaintiff's amended alleged onset date." (Mem. In Opp., Doc. No. 10 at PageID 775 (citing *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009); *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009)).) These cases do stand for the proposition that an ALJ is entitled to rely on the opinions of state agency medical and psychological consultants, even if the record contains later-submitted evidence, as long as the ALJ considers the later records and accounts for any relevant differences in them. *McGrew*, 343 F. App'x at 32; *Kelly*, 314 F. App'x at 830. But the record in this case does not show that the ALJ considered the later-submitted evidence and accounted for relevant changes when he adopted the assessments of the state agency medical consultants and formulated the RFC. Therefore, the cited cases are inapposite.

14

Instead, the ALJ adopted verbatim the exertional, postural, and environmental limitations suggested by the consultants without accounting for later evidence about Plaintiff's spinal condition, including the moderate to severe pathology documented in the July 2020 MRI report. The ALJ stated: "The undersigned finds these recommended limitations supported by citations to the record and explanation, as well as consistent with the medical record. As such, the undersigned has adopted them as the bulk of [Plaintiff's] residual functional capacity." (Decision, Doc. No. 7-2 at PageID 55.) But the ALJ did not expressly find that the consultants' suggested limitations accounted for the later evidence that they did not review. By contrast, the ALJ explained that he added vision-related limitations to the RFC to account for records that the consultants did not consider: "Out of an abundance of caution … and in deference to the claimant's visual difficulties, the undersigned finds it appropriate to further impose the light exposure and visual acuity limitations noted above, neither of which appear to have been considered by the reviewing physicians." (*Id.*)

Nor did the ALJ appropriately account for the later-submitted evidence about Plaintiff's spinal condition elsewhere in the decision. It is true that the ALJ summarized the medical evidence related to Plaintiff's back condition in the RFC analysis. (Decision, Doc. No. 7-2 at PageID 52-53.) But the ALJ noted that an April 2020 lumbar spine x-ray showed only "***mild*** multilevel degenerative lumbar changes." (*Id.* at PageID 52 (emphasis added).) Then, with regard to the later-submitted July 2020 lumbar spine MRI results, the ALJ stated only that the radiologist "noted an impression of multilevel lumbar canal and foraminal stenosis with disc protrusions (Exhibit 12F at 8)," and failed to acknowledge

15

that this imaging showed *moderate to severe* pathology at several levels. (*Compare* Decision, Doc. No. 7-2 at PageID 52, *with* AR, Doc. No. 7-9 at PageID 751.) Perhaps unsurprisingly, given this omission, the ALJ's conclusory statement that the exertional limitations in the RFC "are based on [Plaintiff's] spinal condition" does not explain *why* the RFC limitations for light exertion account for the moderate to severe pathology documented in the July 2020 MRI report. (*See* Decision, Doc. No. 7-2 at PageID 52.)

The ALJ also erred by relying on later-submitted physical therapy records to discount Plaintiff's testimony about his difficulty with sitting, standing, and walking:

> Contrary to his testimony of only being able to sit for 15 minutes at one time, stand 15 minutes at one time and walk 10 minutes at one time, physical therapy notes show [Plaintiff] was capable of sitting without problems and standing and walking for 25 minutes at one time, progressing towards an hour in June 2020 (Exhibit 11F at 9, 20).

(Decision, Doc. No. 7-2 at PageID 52 (citing AR, Doc. No. 7-9 at PageID 706, 717).) The cited records do not show that Plaintiff could sit "without problems." Instead, Plaintiff's physical therapist noted that as of June 30, 2020, Plaintiff met a long-term goal of sitting for one hour *with minimal pain*. (AR, Doc. No. 7-9 at PageID 706, 716.) And although Plaintiff's physical therapist stated that he was "progressing" toward a long-term goal of standing and walking for one hour with minimal pain (*id.* at PageID 706, 716), Plaintiff reported in June 2020 that he could only stand and/or walk for approximately twenty-five minutes before needing to rest. (*Id.* at PageID 717.) Plaintiff stated that "things [were] roughly the same" at the next visit in July 2020. (*Id.* at PageID 707.) Even putting aside these errors, the ALJ failed to explain how the RFC limitations for light exertion activity

16

(which require Plaintiff to sit for approximately *two hours* and stand and/or walk for approximately *six hours* in an eight-hour workday) account for the evidence in those records that documented Plaintiff's difficulties with sitting, standing, and walking.

The ALJ further discounted Plaintiff's testimony about the severity of his back condition by citing Plaintiff's treatment history and examination findings from records dated since June 2021. (Decision, Doc. No. 7-2 at PageID 52-53.) However, the ALJ failed to acknowledge that the examinations documented in the later-submitted records showed limited range of motion at the hip and trunk, decreased right leg strength, decreased strength with lumbar extension, decreased sensation in the right leg, increased radicular symptoms with some stretching and movements, and an inability to perform quick movements without increased pain. (*See, e.g.,* AR, Doc. No. 7-7 at PageID 456-57; AR, Doc. No. 7-9 at PageID 711-12, 724, 733, 744, 746.) Again, the ALJ failed to consider and account for new evidence that the state agency medical consultants did not have the opportunity to review.

For all these reasons, the undersigned finds that the ALJ did not comply with the requirement to consider and account for later-submitted evidence when he relied on the consultants' assessments to formulate the RFC. *McGrew*, 343 F. App'x at 32; *Kelly*, 314 F. App'x at 831. The ALJ therefore did not build a logical bridge between the cited evidence and his conclusions, and the RFC is not supported by substantial evidence. Accordingly, the undersigned recommends that the ALJ's decision be reversed and remanded.

V.   REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the opinion evidence and the medical evidence related to Plaintiff's back condition, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 8) be GRANTED;

2. The Court REVERSE the Commissioner's non-disability determination;

3. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).